641 So.2d 1186 (1994)
W.B. CRAIN
v.
CLEVELAND LODGE 1532, ORDER OF MOOSE, INC.
No. 90-CA-01226.
Supreme Court of Mississippi.
August 11, 1994.
*1187 J. Murray Akers, Greenville, for appellant.
W.O. Luckett, Jr., Luckett Law Firm, Clarksdale, for appellee.
En Banc.
JAMES L. ROBERTS, Jr., Justice for the Court:
This appeal arises from an October 23, 1990, ruling of the Bolivar County Circuit Court granting the Appellee's motion for summary judgment in a negligence action. The case had been remanded in Crain v. Cleveland Lodge 1532, Order of Moose, Inc., 560 So.2d 142 (Miss. 1990) (Crain I), wherein this Court held that the Circuit Court's earlier order granting the summary judgment motion was premature in light of its erroneous quashing of subpoenas issued by W.B. Crain compelling two members of the Moose Lodge to testify at the hearing on the motion.
Crain, aggrieved by the lower court's dismissal, appeals to this Court. Finding the lower court did not err in granting summary judgment to appellee, we affirm.

FACTS
W.B. Crain sustained serious head injuries as the result of an attack by an unknown assailant in the parking lot of Cleveland Lodge 1532, Order of Moose, Inc. (hereinafter "Moose Lodge") shortly before 9:00 p.m. on February 23, 1985.[1] He was a member of the band scheduled to play that evening for the Moose Lodge's "Legion Frolic." Crain, who remained unconscious for two to three weeks after the attack, remembers little about what happened. He testified that it was drizzling when he arrived and he parked behind another car in the crowded parking lot. He further stated that the only light in the parking lot was located next to the building, near the stage door he would have used to enter the building.[2] He last remembers being struck in the head from behind as he attempted to open the rear door of his car to unload his guitar.
During discovery in Crain I, Crain had obtained crime reports from the Cleveland Police Department for the period of January 1, 1980, through January 1, 1985. Reports for fifty-five of the sixty months[3] prior to the attack on Crain show that the following crimes were reported within a two block radius of the Moose Lodge:
110 Commercial Burglaries
3 Residential Burglaries
11 Assaults, Robberies and other violent crimes
152 Larcenies (including 75 thefts from vehicles)
2 Miscellaneous (one bomb threat and one indecent exposure)
In his brief, Crain further explains that four of the crimes reported to the police came from the Moose Lodge, including two for thefts from vehicles. Moose Lodge, however, asserts that only two reported crimes had occurred on the premises in the year prior to the assault on Crain. Crain further alleges that in November, 1984, three months before the complained of incident, two white males were beaten and robbed within sight of the Moose Lodge.[4]
*1188 The Moose Lodge filed notice of its new motion to dismiss, or in the alternative, for summary judgment, on August 20, 1990. Although this Court ruled that Crain should have the opportunity during the summary judgment hearing to cross-examine Police Chief Charles Mosely and Bob Avery, both members of the Moose Lodge, it was noted in the Motion for Scheduling Order that the parties agreed to effectuate the mandate via depositions.
The record includes an eleven page excerpt from Chief of Police Charles Mosely's deposition, wherein he is questioned about his credentials, the police chief's role in crime prevention, and his definitions of "violent crimes" and "high crime" areas. When asked about the deterrent value of adequate outdoor lighting, the following exchange took place:
Q. Studies by the National Crime Prevention Institute and other law enforcement agencies have established that adequate lighting by itself has proven to be an effective deterrent to crime.
A. If  if  if your [sic] asking me to agree with their opinion, I don't know. I  I might agree that they may have come up with this, but I don't  I'm not 
Certainly I think lighting has something to do with it. I don't know how much lighting it would take to deter a crime, if you're asking me that. I don't  don't know that. It would depend on what kind of crime we're talking about. If it's assault or something like that, or robbery, I don't think the lighting has anything to do with it. Burglary, I think it does.
Bob Avery, Secretary of the Moose Lodge stated in his deposition that the officers had discussed the safety of its guests and members on several occasions. He said that they have always made sure that there was lighting outside the building, but that no other measures had been taken because, in his opinion, there was no reason. To his knowledge, none of the women who attended meetings in the social quarters of the Lodge had ever requested male escorts when entering or leaving the building.
In its October 23, 1990, ruling granting the Moose Lodge's motion for summary judgment, the Circuit Court opined that:
The pages from the depositions submitted by Plaintiff offer little by way of new support for his claim that the attack on him occurred in a "high crime" area and that his assailant(s) might have been deterred had the Moose Lodge better illuminated the entrance to the Lodge where the attack occurred. This argument by Plaintiff rests entirely upon speculation.
Having reviewed this matter carefully, the Court is forced to the conclusion that Plaintiff has offered nothing new other than an expanded version of arguments previously rejected. Plaintiff invites this Court to ignore the law of Mississippi on a landowner's liability, vel non, to an invitee for criminal attacks by third parties and urges the Court to apply the law of California or some other state. That invitation is declined.
The Circuit Court then entered an order dismissing the case with prejudice on October 23, 1990.

LAW
M.R.C.P. 56(c) allows summary judgment where there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. When reviewing a decision to grant summary judgment, this Court will conduct a de novo review. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss. 1993); Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss. 1988). Evidentiary matters are viewed in a light most favorable to the non-moving party. Morgan v. City of Ruleville, 627 So.2d 275, 277 (Miss. 1993); Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1354 (Miss. 1990). However, where the party opposing the motion for summary judgment on a claim or defense upon which it bears the burden of proof at trial, and the moving party can show a complete failure of proof on an essential element of the claim or defense, other issues become immaterial and the moving party is entitled to summary judgment as a matter of law. Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, *1189 416 (Miss. 1988); Galloway et al. v. The Travelers Insurance Co., et al., 515 So.2d 678 (Miss. 1987); Celotex Corp. v. Catrett, 477 U.S. 317, 321-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265, 273 (1986). Where triable issues of material fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision will be affirmed. Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983).

WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT MOOSE LODGE
Crain asserts that as a business invitee, the Moose Lodge owed him the duty to keep its premises in a reasonably safe condition and to warn him of any dangerous conditions which existed and were reasonably discoverable. He contends that the Moose Lodge breached that duty by failing to provide adequate security measures in the parking lot to protect its patrons. Thus he argues, based on the crimes reported in the neighborhood, that the Moose Lodge should have foreseen some injury resulting from its alleged negligence. Finally, he urges this Court to reject the "prior similar incidents" rule and adopt the "totality of the circumstances" test for admissibility of evidence under Miss.R.Evid. 401 and 402. Moose Lodge, on the other hand, contends that because there was no evidence of prior similar incidents on its premises, Crain's injuries, as a matter of law, were not reasonably foreseeable.

MOOSE LODGE'S DUTY TO CRAIN
To prove at trial that the Moose Lodge was negligent, Crain must show a) the duty owed him by the Moose Lodge; b) a breach of that duty; c) damages; and d) a causal connection between the breach and the damages, such that the breach is the proximate cause of his injuries. Lyle v. Mladinich, 584 So.2d 397, 398 (Miss. 1991). Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 416 (Miss. 1988); Burnham v. Tabb, 508 So.2d 1072 (Miss. 1987); Boyd v. Lynch, 493 So.2d 1315 (Miss. 1986).
This Court has addressed the duty of care a restaurateur or bar keeper owes to its business invitees. In Grisham, where a patron was injured in an assault by her ex-husband's other former wife at the entrance to the V.F.W. Hall, it was held that the V.F.W. "had a duty to exercise reasonable care to protect her [Grisham] from reasonably foreseeable injury at the hands of another." Id. at 417; Kelly v. Retzer & Retzer, Inc., 417 So.2d 556, 560. (Miss. 1982) The Court has repeatedly emphasized that even though the owner of the premises has this duty of reasonably care he is not an insurer of his guests' or invitees' safety. Grisham, 519 So.2d at 416-417; Kelly, 417 So.2d at 560; J.C. Penny Co. v. Sumrall, 318 So.2d 829, 832 (Miss. 1975); Sears, Roebuck & Co. v. Tisdale, 185 So.2d 916 (Miss. 1966).
In both Grisham and Kelly, the Court emphasized that the foreseeability of the injury sustained provided the touchstone for liability. In Grisham, where one patron was injured during an argument with another, the foreseeability of the act was discussed as follows:
Authorities indicate, however, that the owner can be liable only where he had cause to anticipate the wrongful or negligent act of the unruly patron. C.J.S. Negligence 63(118) and 63(127) The requisite "cause to anticipate" the assault may arise from 1) actual or constructive knowledge of the assailant's violent nature, or 2) actual or constructive knowledge that an atmosphere of violence exists in the tavern. Sucanick v. Clayton, et al., 152 Ariz. 158, 730 P.2d 867 (Ct.App. 1986); Hall v. Billy Jack's, Inc., 458 So.2d 760 (S.Ct.Fla. 1984).
519 So.2d at 416-17.
We explained in Lyle, where a patron at the Fiesta Night Club was abducted, beaten and robbed by an unknown assailant, that with regard to attacks by non-patrons, the phrase "in the tavern" encompasses the parking lot as well as the interior of the premises. Lyle, 584 So.2d at 399. Moreover, we noted that in determining whether an assault was foreseeable, "[c]ourts have relied on such factors as the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the *1190 premises." Id. Finding that Lyle, through an affidavit of the Biloxi Police Chief, had established that other "crimes against the person" had occurred at the Fiesta, as well as in area of the club, the case was reversed and remanded for a trial on the merits.
In Kelly, where, as in Grisham, no breach of duty was found, the Court considered the foreseeability of a fatal shooting in a McDonald's parking lot. There was evidence presented of 28 police offense reports stemming from calls made to the restaurant during the three years prior to the shooting. Kelly, 417 So.2d at 559. Of the myriad complaints, two were assaults and one, a simple assault. Id. The Court found that management had taken reasonable measures to prevent foreseeable problems by having the parking lot checked every thirty minutes for loiterers, taking measures to disperse the teenagers who gathered on the premises, and hiring security guards to patrol on weekend evenings. Id. at 559, 561. However, the Court found that "Kelly's voluntary interference into an already hostile situation was an independent intervening cause which could not have been reasonably foreseen or prevented by McDonald's." Id. at 562. In affirming the lower courts's granting of Retzer's motion for a directed verdict, it held that:
... we are of the opinion the responsibility of enforcing the law is on the government chosen by the people of the area and does not necessarily rest upon the business involved.
Id. at 563.

WAS CRAIN'S INJURY REASONABLY FORESEEABLE?
Like the victim in Lyle, Crain was assaulted by an unknown assailant. As distinguished from Kelly and Grisham, Crain was not involved in a squabble with an unruly guest at the Moose Lodge nor did he interject himself voluntarily into an already hostile situation. He asserts, therefore, that because of the high crime rate in the neighborhood, an unprovoked criminal attack on an invitee by an unknown third party was foreseeable by the Moose Lodge. In discussing the foreseeability aspect of a business's duty to its invitees, the Kelly court cited with approval Radloff v. National Food Stores, Inc., 20 Wis.2d 224, 121 N.W.2d 865 (1963):
Everyone can foresee the commission of a crime virtually anywhere and at any time. If foreseeability itself gave rise to duty to provide "police" protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner.
Other jurisdictions have reached varied results in determining whether an unprovoked assault upon an invitee was foreseeable by the premises owner. The Michigan court, in holding that a restaurant owner was not liable for a criminal assault on its patrons, found that "[c]riminal activity, by its deviant nature, is normally unforeseeable." Papadimas v. Mykonos Lounge, 176 Mich. App. 40, 439 N.W.2d 280, 283 (1989). The Papadimas court further found that although the risk of an unknown assailant might be more foreseeable in a high-crime area, it would not impose a higher standard of duty in those areas, stating that "[a]lthough crime occurs more frequently in certain areas of our cities and particular portions of the state, we again decline to apply a higher standard of duty in such so-called high crime areas." Id. 439 N.W.2d at 283.
In California, where the courts have found business owners liable for criminal acts upon their invitees, foreseeability with respect to the imposition of a duty is regarded as a mixed question of law and fact. Onciano v. Golden Palace Restaurant, 219 Cal. App.3d 385, 390, 268 Cal. Rptr. 96, 98 (Cal. App. 2 Dist. 1990). The Onciano court stated:
in determining the existence of a landowner's duty to protect invitees from the wrongful conduct of third persons, foreseeability is measured by all of the circumstances including the nature, condition and location of the defendant's premises and defendant's prior experience, bearing in mind that what is required to be foreseeable is the general nature of the event or harm, not its precise manner or occurrence.

219 Cal. App.3d at 394, 268 Cal. Rptr. at 99 (emphasis added), citing Isaacs v. Huntington *1191 Memorial Hospital, 38 Cal.3d 112, 129, 211 Cal. Rptr. 356, 695 P.2d 653 (1985).
Crain urges this Court to adopt the position taken by the California court in Isaacs and its progeny. In so arguing, Crain further asks this Court to abolish the "prior similars" rule and adopt the "totality of the circumstances" test, wherein criminal activity may be considered foreseeable and a business owner may be found liable even when no similar incidents have occurred on his premises. Isaacs, 211 Cal. Rptr. at 360-62, 695 P.2d at 657-659. The Isaacs court found that the "prior similar incidents" rule "erroneously equates foreseeability of a particular act with previous occurrences of similar acts." Id. at 362, 695 P.2d at 659. It reiterated that "`the fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts.'" Id., quoting Weirum v. RKO General, Inc., 15 Cal.3d 40, 46, 123 Cal. Rptr. 468, 539 P.2d 36 (1975). Finally, the court found that the "prior similar incidents" rule improperly removed too many cases from the jury's consideration. Id.
As persuasive as the Isaacs opinion may appear, the California courts seemingly have stretched the "totality of the circumstances" test to the level of strict liability where parking lots are involved. In Onciano, supra, a patron was assaulted and robbed at gunpoint in the parking lot of a restaurant located in Los Angeles' Chinatown at about 12:30 a.m. The parking lot was surrounded by a chain link fence and well-lit. The parking lot attendant was not on duty at that hour of the night. Moreover, there was evidence that crime in Chinatown was "minimal" and that for more than six years prior to the assault, there had been no other reports of crime on the property. 219 Cal. App.3d at 389, 390, 268 Cal. Rptr. at 97, 99. In reversing the lower court's grant of summary judgment in favor of the defendant restaurant, the court found that "the lack of such [prior similar] incidents does not by itself negate the element of foreseeability as a matter of law." Id. at 390, 268 Cal. Rptr. at 99. As one dissenting member of the court pointed out, the "dicta" of Isaacs which led to the reversal of those cases espousing the "prior similar incidents" rule has led to its own inequities. Id. at 392, 268 Cal. Rptr. at 101 (Woods, A.J., concurring in part, dissenting in part).
In Sawyer v. Carter, 71 N.C. App. 556, 322 S.E.2d 813 (1984), the North Carolina court, while finding that "evidence pertaining to the foreseeability of criminal attack shall not be limited to prior criminal acts occurring on the premises," affirmed the lower court's grant of summary judgment in favor of the owner of "The Back Door," a convenience store. Id. 322 S.E.2d at 817. In that case, an acquaintance of the store manager was shot by robbers while tending to the front of the premises while the manager went to the back of the store. As in the case sub judice, the plaintiff relied extensively on evidence of similar crimes in the general vicinity rather than at the convenience store to support his claim that the attack was foreseeable. He presented evidence that fifty-five robberies had occurred in the area during the seven years prior to the incident complained of. A local convenience store owner, in his affidavit, stated that almost all small stores in the area which remained open after dark had been robbed at least once in the previous six years. The Back Door Store manager stated that he recalled only one robbery at the store, which had occurred some five years before the incident. The court found that this evidence was insufficient to establish a triable issue of fact on the question of reasonable foreseeability, stating:
We doubt there exists a community in this State which is entirely crime-free. In the broadest sense, all crimes anywhere are "foreseeable." To impose a blanket duty on all merchants to afford protection to their patrons would be a result not intended by our courts and not condoned by public policy. Discharging such a duty would undoubtedly be inconvenient and expensive, and to impose a duty absent true foreseeability of criminal activity in a particular store would be grossly unfair.
Id. at 817.
We refuse to place upon a business a burden approaching strict liability for all injuries occurring on its premises as a result of criminal acts by third parties. As we implied in Lyle, where an invitee is injured by acts of *1192 an unknown assailant we are not entirely limited to looking at the prior crimes which have occurred at the Moose Lodge, but rather we may look beyond the immediate premises to the surrounding neighborhood. While the amount and type of criminal activity in the general vicinity of the defendant's business premises is one factor that should be given consideration when determining foreseeability, merchants are not required to carry out the duties of the police force. Crime has become so prevalent in recent years that even without taking the financial burden into consideration it would be impossible for a business to guarantee the safety of everyone coming onto its premises.
Crain's assertion that his injury was foreseeable is without merit. As Moose Lodge indicates, there had been only two reports of crime on the premises within the year prior to the assault on Crain. In February, 1984, burglars entered through the roof of the Lodge, and stole $643.00 from game machines. Later that year, in October, a tire and C.B. radio were stolen from a vehicle parked at the Lodge. These incidents, in and of themselves, hardly seem adequate to put Moose Lodge on notice that a serious assault upon an invitee was foreseeable. As to the incidence of crime in the vicinity of the Moose Lodge, the record indicates that in fifty-five of the sixty months prior to the attack on Crain there were numerous commercial burglaries and reports of larceny in the vicinity of the Moose Lodge, but there were only eleven assaults, robberies and other violent crimes in that five year period. Based on the scant evidence in the record it would be difficult to say the assault on Crain was foreseeable.

PROXIMATE CAUSE
Assuming, without deciding that Crain made a showing sufficient to establish the foreseeability of the assault, therefore placing on Moose Lodge a duty to protect against it, he must still make a showing of proximate cause. "[P]roximate cause arises when the omission of a duty contributes to cause an injury." Drummond v. Buckley, 627 So.2d 264, 270 (Miss. 1993); Grisham, 519 So.2d at 417; Clayton v. Thompson, 475 So.2d 439, 445 (Miss. 1985).
There is absolutely no evidence which was made part of the record for this appeal which shows a causal link between the amount of lighting in the Moose Lodge parking lot and the injury sustained by Crain at the hands of his assailant. Crain made no showing that any omission on the part of Moose Lodge was the proximate cause of the attack or injury. This failure on the part of Crain to make any showing as to proximate cause, an essential element of his claim, makes summary judgment in favor of Moose Lodge appropriate in this instance.

CONCLUSION
This Court's decisions in Grisham and Kelly, while finding in favor of the premises owners, have imposed a duty to protect invitees from foreseeable attacks by third persons. In the case sub judice, there is no evidence of prior violent, unprovoked attacks occurring in the Moose Lodge parking lot. Looking beyond the boundaries of the Moose Lodge to the surrounding two blocks, as Crain urges the Court to do, his brief states that there were only eleven assaults, robberies and other violent crimes in the area over nearly a five year period. Crane has failed to put forth sufficient evidence to establish that the assault was foreseeable. Even assuming the foreseeability of an attack, Crain has failed to make any showing that an omission on the part of Moose Lodge was the proximate cause of the attack. The Circuit Court's decision to grant Moose Lodge's motion for summary judgment is therefore affirmed.
AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
McRAE, J., dissents with separate written opinion joined by BANKS, J.
McRAE, Justice, dissenting:
W.B. Crain was assaulted in the dimly lit parking lot of the Moose Lodge, located in a *1193 Cleveland, Mississippi, neighborhood which had been plagued by commercial and residential burglaries, thefts and a number of assaults and other violent crimes. The majority, finding that the attack on Crain was neither foreseeable nor proximately caused by the Moose Lodge's negligence, affirms the circuit court's grant of summary judgment in favor of the Moose Lodge. However, without imposing a new and higher duty of care upon tavern owners and restaurateurs, these are questions of fact which should have been determined by a jury. Accordingly, I dissent.
Crain obtained crime reports for fifty-five of the sixty months prior to the February 23, 1985, incident. During that period, the following crimes had been reported within a two block radius of the Moose Lodge: 110 commercial burglaries; three residential burglaries; eleven assaults, robberies and other violent crimes; 152 larcenies (including 75 thefts from vehicles); two miscellaneous (one bomb threat and one indecent exposure). The majority, however, thrusting itself into the role of ultimate fact finder, concludes that since "only" eleven assaults and other violent crimes had occurred in a two-block radius of the Moose Lodge over a five-year period and no "prior violent, unprovoked attacks" had actually occurred in the parking lot where Crain was attacked, there was insufficient evidence that the incident was foreseeable and, further, that no act or omission on the part of the Moose Lodge proximately caused his injuries.
On an appeal from a grant of summary judgment, this Court reviews the evidence de novo. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss. 1993); Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss. 1988). Further, we view the evidence in a light most favorable to the non-moving party; in this case, W.B. Crain. Morgan v. City of Ruleville, 627 So.2d 275, 277 (Miss. 1993). Applying this standard of review does not seat this Court as a thirteenth juror. Rather, our job is to determine whether triable issues of fact exist for a jury to consider. In this case, the crime statistics from the neighborhood surrounding the Moose Lodge and evidence that officers of the Lodge had discussed the issue of safety raise a jury question of foreseeability. Likewise, whether the Moose Lodge had breached its duty to Crain and other invitees by failing to provided adequate lighting in the parking lot and/or other security measures likewise is a question for a jury to determine.
To remand this case for trial does not require that we elevate the duty of the proprietor of a bar or tavern to that of insurer of his invitees' safety, nor does it require that we redefine our established notion of foreseeability. In Lyle v. Mladinich, 584 So.2d 397 (Miss. 1991), where a patron was abducted at gunpoint from a tavern parking lot, we recognized that, in determining whether an injury is "reasonably foreseeable," courts should consider factors such as "the overall pattern of criminal activity in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the premises." Id. at 399. Thus, the evidence Crain presented of crime statistics within a two-block radius of the Moose Lodge, as well as in the Lodge's parking lot, establishes that other crimes against persons had occurred in the vicinity of the Moose Lodge, thus raising a jury question of foreseeability.
In Lyle v. Mladinich, as in the case sub judice, there likewise was a question of whether adequate security measures had been taken by the proprietor. Finding this created a proximate cause issue for the jury, we stated:
The trial judge held that there was no evidence of proximate causation  reasoning that the presence of a security person would have made no difference and that the jury would have had to speculate in order to resolve the issue. This was a close call for the judge to make, and in view of the standard of review, this Court feels compelled to hold that a triable issue of fact exists regarding the proximate-causation element. On remand, the jury must determine whether the Mladiniches' discontinuance of its previous policy of hiring security personnel to patrol the parking lot constituted a breach of duty and, if so, whether this breach proximately caused or contributed to Lyle's injuries. This opinion should not, of course, be construed as *1194 resolving the negligence issue in favor of Lyle; rather, on the basis of the evidence, Lyle is entitled to an opportunity to prove the merits of his case at a trial.
Lyle, 584 So.2d at 400. To the contrary, today's majority appears to resolve the negligence issue in favor of the Moose Lodge. However, especially considering our standard of review, the issues of (1) foreseeability, (2) whether the Moose Lodge breached its duty by not providing better lighting or other security measures which would serve to deter crime in the parking lot, and (3) whether any breach was the proximate cause or a contributing factor to Crain's injuries, should have been presented to the jury. Lyle was provided the opportunity to present the merits of his case to a jury. Crain is likewise so entitled. Accordingly, I dissent.
BANKS, J., joins this opinion.
NOTES
[1] Because the facts of this case are not included in the record, the relevant facts have been taken from Crain I and are incorporated within the Statement of the Case.
[2] Moose Lodge stipulated solely for purposes of summary judgment that there was only one light in the parking lot. However, it was prepared to offer proof that there was more than one light if the case came to trial.
[3] Apparently, the records were incomplete, with five unspecified months missing. These reports were part of the record before this Court in Crain I, 560 So.2d at 147 (Robertson, J., dissenting).
[4] This assault at the nearby Chat & Chew Restaurant was included in the actual complaint reports for 1984, but did not show up in the police department's summary file.