IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-60414
Summary Calendar
_____


TIMOTHY HOUCK,

                              Plaintiff-Appellant,

v.

SUNSHINE JUNIOR FOOD STORES and
PEOPLES TELEPHONE COMPANY,

                                   Defendants,

SUNSHINE JUNIOR FOOD STORES,

                         Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(1:96-CV-286-CR)
_____
March 31, 1998
Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]


     Plaintiff-appellant Timothy Houck appeals the district

court's judgment as a matter or law for defendant-appellee

Sunshine Junior Food Stores on his premises liability claim.  We

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 1994, Houck received a page from his employer, Sears.  Houck, who resided at his brother's home within a block of a store owned by Sunshine Junior Food Stores (Sunshine), routinely shopped at the Sunshine store and utilized the pay telephones there because his brother's telephone had been disconnected.  The two pay telephones, placed at the Sunshine store by Peoples Telephone Company (Peoples), were located on the brick exterior wall approximately three feet from the indentation leading to the front entrance of the store.  Although a cashier behind the register area could not see patrons using the telephones, an expert witness testified that a surveillance camera located inside the store and directed at the cashier area could have recorded activity at the corner where the phones were located.

Sometime after dark on May 28, Houck drove to the Sunshine store, parked in front, and used the telephone located closest to the store entrance to return the page to his employer.  After receiving a busy signal at his employer's telephone number, Houck telephoned his ex-wife to arrange visitation with his children.  During the conversation with his ex-wife, Houck heard a pager and noticed two men, approximately twenty yards away, walking toward

the Sunshine store.

After reaching the premises, the larger of the two men approached Houck and told him to get off the phone. Houck told him to use the other phone or to wait until he finished his call. The larger man mumbled and walked into the store. The shorter of the two men placed a call from the adjacent telephone. While Houck continued his telephone conversation, the larger man returned and demanded a quarter. Houck responded that he had no quarter, but reached in his pocket and gave the man the change he had which was twenty-three cents. Keeping the two dimes, the man threw the three pennies on the ground. In response to the larger man's subsequent demand for the rest of his money, Houck answered that he had none. The smaller man told the other that Houck said he had no money, so "go on." The larger man went back inside the Sunshine store. Houck continued his telephone conversation.

The smaller man then attempted to grab Houck's pager, and Houck prevented him from doing so. Houck refused the smaller man's subsequent request to look at the pager. The smaller man began mumbling what Houck described as threats to take the pager. As Houck ended his telephone call and turned sidewards to face the smaller man, the smaller man hit him beneath the eye. Houck stepped forward, asked him why he hit him, and stared him down for some amount of time. Shortly thereafter, someone, presumably the larger man, hit Houck in the back of the head with a metal object. All of these events transpired within three to four feet

of the Sunshine store entrance.  Houck was discovered unconscious at 11:19 p.m. and transported by ambulance to a local hospital, where he remained for four to five days for treatment of his head injury.

Houck sued Sunshine and Peoples for negligence in failing to provide adequate security for the users of pay telephones located on Sunshine's premises.  The district court granted Peoples' motion for summary judgment and dismissed Peoples with prejudice from the suit.

At trial before a jury, Houck presented the video deposition from his treating physician and testimony from two witnesses-- Houck and Cynthia Payne Swetman Childers, designated by Sunshine as a security expert.  Sunshine moved for judgment as a matter of law at the end of Houck's case-in-chief.  Concluding that the evidence was "woefully lacking in showing any negligence" and "void concerning any proximate cause," the District Court granted Sunshine's motion.

## II.  DISCUSSION

Houck contends that the District Court erred in granting Sunshine's motion for judgment as a matter of law.  Because this is a diversity case, we apply the federal standard to determine if the judgment as a matter of law was proper.  *Entente Mineral Co. v. Parker*, 956 F.2d 524, 526 (5th Cir. 1992); *Matador Drilling Co. v. Post*, 662 F.2d 1190, 1195 (5th Cir. 1981).  We

4

review a district court's grant of judgment as a matter of law de novo. *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994).

Judgment as a matter of law is appropriate in cases where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED. R. CIV. P. 50(a); *see also Conkling*, 18 F.3d at 1300. The court need not submit an issue to the jury merely because the party having the burden of proof at trial introduces a scintilla of evidence to support his position unless that evidence is such that a jury would be justified in finding in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1985); *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969). "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[] is proper." *Boeing*, 411 F.2d at 374. The court must review the entire trial record in the light most favorable to the non-moving party, reserving credibility determinations and factual inferences for the jury. *Conkling*, 18 F.3d at 1300 (citing *Anderson*, 477 U.S. at 255). "The 'decision to grant [judgment as a matter of law] . . . is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury.'" *Id.* at 1300-01 (quoting *In re Letterman*

5

*Bros. Energy Sec. Litig.*, 799 F.2d 967, 972 (5th Cir. 1986)).

Under Mississippi law, to prevail on a negligence claim, Houck must prove that (1) Sunshine owed a duty to him; (2) Sunshine breached that duty; (3) he sustained damages; and (4) Sunshine's breach of duty was the proximate cause of his damages. *Lyle v. Mladinich*, 584 So. 2d 397, 399 (Miss. 1991). In order to bear his burden, Houck must allege specific acts or omissions rather than make general assertions that Sunshine failed to exercise ordinary care. *McWilliams v. City of Pascagoula*, 657 So. 2d 1110, 1111 (Miss. 1995). Houck contends that Sunshine breached its duty of care to its patrons through negligent placement of the pay telephones.

"Whether a duty exists is a question of law." *Id.* at 400. Sunshine is not strictly liable to its guests for any injury that occurs on its premises; rather, Sunshine owes its patrons a duty to exercise reasonable care to protect invitees from reasonably foreseeable injuries by third parties. *Crain v. Cleveland Lodge 1532, Order of Moose, Inc.*, 641 So.2d 1186, 1189 (Miss. 1994). Liability attaches where the owner has "cause to anticipate the wrongful or negligent act of [an] unruly patron." *Id*. For Sunshine to have cause to anticipate a potential assault, it would need to have either "(1) actual or constructive knowledge of [an] assailant's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists in the tavern."

6

*Id.*  The Mississippi Supreme Court has expanded the definition of "in the tavern" to encompass both the exterior and interior of a business premises.  *Lyle*, 584 So. 2d at 399.

Houck neither submitted evidence at trial nor argues on appeal that Sunshine had actual or constructive knowledge of the assailants' violent nature.  Consequently, the question of foreseeability requires us to determine whether sufficient evidence exists that Sunshine had actual or constructive knowledge of a violent atmosphere surrounding its premises.  Relevant factors include the pattern of criminal activity both in the general vicinity and on the premises prior to the event which is the subject of this suit.  *Crain*, 641 So.2d at 1189-90 (citing *Lyle*, 584 So. 2d at 399).

Houck introduced evidence of criminal activity in the vicinity of Sunshine's store through the testimony of Childers, a security expert witness.[1]  Childers testified that, in the two

_____

[1]  In his initial brief, Houck asserted that he had introduced police reports to demonstrate the level of criminal activity at the Sunshine store.  He included citations in his initial brief and submitted copies of criminal reports regarding incidents of shoplifting and gasoline theft at the Sunshine store in his record excerpts.  Sunshine argued that Houck misrepresented the evidence to this court.  The district court granted Sunshine's Motion to Strike Exhibits because Houck failed to disclose these documents in discovery.  In his reply brief, Houck conceded that the district court had excluded the police reports and claimed that his assertion to this Court was an inadvertent mistake.  On appeal, he does not argue that the district court erred in excluding the police reports.  Consequently, the only evidence before the court regarding criminal activity is Childers's testimony.

7

years prior to Houck's assault, two assaults, one arrest for concealment of a weapon, and a number of minor criminal incidents had occurred on Sunshine's premises. In August 1992, almost two years prior to Houck's assault, an incident of domestic violence occurred inside an automobile parked near the pay telephones. That same month, police arrested a store patron for carrying a concealed weapon. Six months prior to Houck's assault, a female clerk had an altercation with a regular customer. Following a dispute inside the store, the clerk successfully repelled an attack when a customer grabbed her as she disposed of trash in the dumpster located in the store parking lot. Houck introduced evidence of no incidents of violence against a store patron by an unknown third party other than the assault in which he was the victim.

Sunshine argues, and the district court agreed, that *Crain v. Cleveland Lodge 1532, Order of the Moose, Inc.*, 641 So. 2d 1186 (Miss. 1994), controls the disposition of this case. In *Crain*, Crain was the victim of an assault that occurred in the parking lot of Moose Lodge as he unloaded a musical instrument from the trunk of his car. *See id.* at 1187. In an attempt to prove foreseeability, Crain introduced police reports documenting 278 crimes, eleven of which were considered violent crimes, occurring within a two block radius of the lodge during fifty-five of the sixty months prior to his assault. *Id.* Four of the

8

crimes occurred at the Moose Lodge, including two that occurred within the year immediately preceding Crain's assault. *Id.*

Houck argues that *Crain* is distinguishable from this case. He contends that in *Crain*, the plaintiff submitted only two reports of crimes occurring on the Moose Lodge premises, whereas Houck presented substantial evidence constituting "a pattern of routine and frequent criminal activity" on Sunshine's premises. Furthermore, he asserts that neither of the two crimes at Moose Lodge were crimes against the person. *See id*. at 1192. He fails to note, however, that the evidence of criminal activity presented at trial consisted solely of Childers' testimony. That testimony described two incidents of crimes against the person within the two years preceding Houck's assault, one of which occurred inside a vehicle located in the parking lot of the Sunshine store.

The specific claim of negligence in *Crain* centered on inadequate lighting. *Id*. at 1192. Only one light located near the building illuminated the parking lot. On the evening of Crain's assault, inclement weather exacerbated the poor security situation allegedly caused by bad lighting.[2] *Id*. at 1187. Nevertheless, the Mississippi Supreme Court granted the

---

[2] Although Moose Lodge stipulated for purposes of summary judgment that only one light existed in the parking lot, it claimed that the parking lot was actually illuminated by more than one light. *Id*. at n.2.

defendant's motion for summary judgment, holding that two crime reports on the lodge's premises within the year prior to Crain's assault were insufficient to establish that Moose Lodge should have reasonably foreseen the assault on Crain. *Id*. at 1192. Addressing the issue of foreseeability, the court stated that "[e]veryone can foresee the commission of a crime virtually anywhere and at any time. If foreseeability itself gave rise to duty to provide 'police' protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner." *Id*. at 1190 (citations omitted).

Houck argues that his claim is similar to *Lyle v. Mladinich*, 584 So. 2d 397 (Miss. 1991), in which two unknown assailants accosted James Lyle in the parking lot of the Mladiniches' restaurant and forced him into their car at gunpoint. *See id*. at 398. The Mississippi Supreme Court remanded the case for a determination of whether "discontinuance of its previous policy of hiring security personnel to patrol the parking lot constituted a breach of duty and, if so, whether [that] breach proximately caused or contributed to Lyle's injuries." *Id*. at 400. Houck does not contend that Sunshine has discontinued any security measure that may have prevented Houck's injury nor does he produce any evidence supporting such a contention. He likewise does not argue that Sunshine breached its duty by not

10

supplying a security officer to patrol the store.

Houck's sole argument is that Sunshine breached its duty through negligent placement of the pay telephones. Yet, Houck introduced no evidence that the placement of the phones was problematic or that placement of the phones elsewhere would be preferable. Although a clerk standing behind the counter is unable to see patrons using the telephones, a surveillance camera records activity at the corner where the phones are located. Moreover, the telephones are located within three feet of the indentation leading to the Sunshine store entrance. Childers testified that nothing in her review of photos of the store, discussions with an employee who visited the site, or inspection of police reports would warrant a recommendation to move the pay telephones to a different location.

Even if sufficient evidence exists to submit the question of breach of duty to a jury, Houck must still prove a causal link between Sunshine's purported breach and his injury. *See Crain*, 641 So. 2d at 1191. He offered no evidence to show that, had Sunshine placed the pay telephones in a different location, his injuries would not have occurred. As such, he offered no evidence proving that any act or omission on the part of Sunshine proximately caused his injuries. Although proximate cause is generally a fact question for the jury, when the plaintiff offers no evidence, as here, no question exists for the jury to decide.

11

*See Crain*, 641 So. 2d at 1192.  Houck's failure to prove an essential element of his negligence claim is fatal.

The district court rendered judgment as a matter of law after Houck was fully heard on his claim.  Reviewing the entire trial record in the light most favorable to Houck, this court concludes that a reasonable person could come to only one conclusion--that Houck failed to produce sufficient evidence to demonstrate negligence on the part of Sunshine.  We conclude that the district court did not err in granting Sunshine's motion for judgment as a matter of law.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.