963 So.2d 1279 (2007)
Brandy MAGNUSEN, Appellant
v.
PINE BELT INVESTMENT CORPORATION, Appellee.
No. 2006-CA-01235-COA.
Court of Appeals of Mississippi.
September 4, 2007.
*1280 Catouche Judge Body, attorney for appellant.
L. Clark Hicks, Hattiesburg, attorney for appellee.
Before KING, C.J., GRIFFIS, BARNES, and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. In this premises liability case, Brandy Magnusen sued Pine Belt Investment Corporation after she was attacked at a Burger King franchise owned and operated by Pine Belt. Magnusen alleged that Pine Belt had actual or constructive knowledge that an atmosphere of violence existed at the Burger King. Pine Belt denied liability.
¶ 2. Pine Belt filed a motion for summary judgment and alleged that there was no evidence to support a theory that a pattern of criminal activity existed in the vicinity of the Burger King. The circuit court agreed and granted Pine Belt's motion for summary judgment. Magnusen appeals. Finding no error, we affirm.

*1281 FACTS AND PROCEDURAL HISTORY
¶ 3. Around 8:00 p.m. on August 22, 2003, Magnusen intended to use the drive-through line at Burger King in Poplarville, Mississippi. Magnusen felt as though the line was too long, so she never ordered. As she approached the parking lot exit, a truck moved and blocked her exit. Another truck blocked her in from behind. According to Magnusen, when she got out of her truck, six men "started beating on [her]."[1] After the six men stopped hitting Magnusen, a Burger King employee went outside and told Magnusen that employees called an ambulance and the authorities. The employee invited Magnusen inside so Magnusen could rinse out her mouth.
¶ 4. An ambulance arrived shortly before Magnusen's mother. Magnusen's mother drove Magnusen, nineteen years old at the time, to Gulfport Medical Regional Hospital. There, x-rays revealed that Magnusen's jaw was broken on both sides. An oral surgeon repaired Magnusen's jaw with plates and screws on both sides. Additionally, Magnusen's jaw was wired shut for six months.
¶ 5. On August 30, 2004, Magnusen filed a complaint in the Pearl River County Circuit Court. Magnusen sued Pine Belt Investment Corporation, the owner of the particular Burger King franchise, and alleged that Pine Belt was liable for her injuries because Pine Belt failed to provide adequate security for her. Magnusen also alleged that a pattern of criminal activity existed in the general vicinity of the premises.
¶ 6. On October 24, 2005, Pine Belt filed a motion for summary judgment. Pine Belt claimed that summary judgment was appropriate because there was no atmosphere of violence on the premises. Pine Belt also submitted that there was no genuine issue of material fact as to causation.
¶ 7. On May 8, 2006, the circuit court granted Pine Belt's motion for summary judgment. The circuit court found no genuine issue of material fact as to whether there was an atmosphere of violence on the Burger King premises. The circuit court also found no genuine issue of material fact existed as to whether Pine Belt proximately caused Magnusen's injuries. Magnusen appeals.

STANDARD OF REVIEW
¶ 8. This Court conducts a de novo review of orders granting or denying summary judgment. Mantachie Natural Gas v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss.1992). According to Rule 56 of the Mississippi Rules of Civil Procedure, a circuit court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "A fact is material if it `tends to resolve any of the issues, properly raised by the parties.'" Webb v. Jackson, 583 So.2d 946, 949 (Miss.1991) (quoting Mink v. Andrew Jackson Cas. Ins. Co., 537 So.2d 431, 433 (Miss.1988)).
*1282 ¶ 9. The moving party bears the burden of showing that no genuine issue of material fact exists. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990). Additionally, the circuit court must view the evidence in the light most favorable to the non-moving party. Russell v. Orr, 700 So.2d 619, 622 (Miss.1997). Furthermore, the circuit court must consider motions for summary judgment with a skeptical eye. Ratliff v. Ratliff, 500 So.2d 981, 981 (Miss. 1986). It is better for the circuit court to err on the side of denying the motion. Id.

ANALYSIS
¶ 10. "A claim of negligence has four elements: duty, breach, causation, and damages." Price v. Park Management, Inc., 831 So.2d 550(¶ 5) (Miss.Ct. App.2002). To prove that the circuit court should not have granted Pine Belt's motion for summary judgment, Magnusen had to demonstrate that a genuine issue of material fact existed regarding the fact that: (a) Pine Belt owed her a duty, (b) Pine Belt breached that duty, (c) damages, and (d) "a causal connection between the breach and the damages, such that the breach is the proximate cause of [her] injuries." Crain v. Cleveland Lodge 1532, Order of the Moose, Inc., 641 So.2d 1186, 1189 (Miss.1994) (citing Lyle v. Mladinich, 584 So.2d 397, 398 (Miss.1991)).
¶ 11. The duty Pine Belt owed to Magnusen depends on whether Magnusen was a licensee, an invitee, or a trespasser. This question of status can be a jury question, but where the facts are not in dispute, the question of status becomes a question of law. Little v. Bell, 719 So.2d 757(¶ 17) (Miss.1998). Here, there is no factual dispute that Magnusen was on the premises of Burger King as a drive-through customer. A person who goes upon the premises of another as a result of an express or implied invitation of the owner or occupant for their mutual advantage is classified as an invitee. Id. at (¶ 15). As such, Magnusen was an invitee and Pine Belt was duty bound to "keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not [in] plain and open view." Id. at (¶ 16). Said differently, a premises owner owes an invitee a duty to exercise reasonable care to protect an invitee from reasonably foreseeable injury at the hands of another. Crain, 641 So.2d at 1189. That being so, we must determine whether Magnusen's injury, caused by a third party, was "reasonably foreseeable."
¶ 12. An act may be considered reasonably foreseeable if the premises owner had cause to anticipate the third party act. Id. "Cause to anticipate" a third party act may arise from (1) actual or constructive knowledge of the third party's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence existed on the premises. Id. When determining whether a defendant had actual or constructive knowledge that an atmosphere of violence existed, pertinent factors for consideration are: (1) "the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises," and (2) "the frequency of criminal activity on the premises." Id. at 1189-90.
¶ 13. According to the affidavit of Bashir Shams, the owner of Pine Belt, "[t]here was no pattern of violent criminal activity or other similar activity on the Burger King premises prior to the time that . . . Magnusen was involved in the incident. There was no frequency of similar *1283 criminal activity or other violent activity on the premises prior to the incident." Otherwise, the circuit court considered Magnusen's deposition and sixteen police reports from 1998 until Magnusen's attack in August of 2003. Magnusen's deposition did not establish that Burger King had actual or constructive knowledge that a violent atmosphere existed at Burger King. Rather, Magnusen said she was unaware of any prior criminal activity at Burger King.
¶ 14. As for those sixteen police reports, four of them involved crimes against employees. In March of 2003, a Burger King employee complained that someone took her purse from her car while it was parked with the doors unlocked and the driver's side window rolled down. The report indicates that the employee suspected that a co-worker was to blame. In September of 2002, an employee reported that someone took her purse after she left it to take her break. In June of 2001, an employee reported that someone hit her car and left the scene. In July of 2000, an employee reported that some of her co-workers were making threatening comments directed at her.
¶ 15. Three other police reports involved theft from Burger King. During September of 2002, employees arrived to open the restaurant and found that someone had broken into the restaurant and unsuccessfully tried to break into the safe. In August of 2000, someone stole a blower motor from the air conditioning unit on the roof of the restaurant. Finally, in December of 1999, an employee forgot to drop off the deposit bag and, the next morning, the deposit bag was $351 short.
¶ 16. Other police reports detailed random crimes committed at or around Burger King. In April of 2003, an anonymous female called in a bomb threat at Burger King. During February of 2002, a drunk driver passed out in line at the drive through. In December of 2002, someone tried to pass a counterfeit $100 bill.
¶ 17. Three reported incidents involved assaults on one particular employee. That employee claimed that, in January of 2001, two men "jumped" the employee from behind and passed a note that said they were going to kill him. The same employee filed two other reports in February of 2001. One report indicated that, as the employee was on his break, someone grabbed him by the shirt and hit him on the left side of his head. The report detailed that the employee had no head trauma. A second report indicated that, as the employee took out the trash, someone cut the employee with a razor blade and then held the razor to the employee's throat. These three reports have no bearing on our consideration because the employee later confessed that he fabricated all of them.
¶ 18. Two more reports involve lost purses by customers. In December of 2001, a customer left her purse in the restaurant and, when she returned, it was gone. In April of 1998, a customer left her purse, but employees set it aside. When she went to claim her purse, the employees could not find it.
¶ 19. Finally, one report involved an assault on a customer in the drive-through line. During June of 2003, a man approached a woman as she waited in her car. The man tried to open the woman's car door, but the door was locked. The man then grabbed the woman's shirt and tried to pull her out of her car through the driver's side window. The person waiting ahead of the woman left his car and pushed the attacker away.
*1284 ¶ 20. In Stevens v. Triplett, 933 So.2d 983(¶ 9) (Miss.Ct.App.2005), this Court found that summary judgment was appropriate in a premises liability case when a plaintiff presented police reports that demonstrated "only a handful of violent crimes in the area in the five years preceding the incident in question" and none of those crimes occurred on the defendant's property. Here, there is proof that some crimes occurred on Burger King's property, but only one of those crimes could be considered violent. After careful consideration, we agree with the circuit court that Magnusen presented no genuine issue of material fact as to whether Burger King had actual or constructive notice that an atmosphere of violence existed on its property. Accordingly, there is no genuine issue of material fact that this attack on Magnusen was not reasonably foreseeable by Pine Belt and Pine Belt owed Magnusen no duty to protect her from that unforeseeable attack. We therefore affirm the circuit court's decision to grant summary judgment in Pine Belt's favor.
¶ 21. THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] There exact motive for the attack on Magnusen is unclear. During her deposition, Magnusen said she did not know why she was attacked. Magnusen had a Stone County license plate at the time. Speculated theories include inter-county rivalries between Stone County and Pearl River County and accusations of initial aggression and name-calling by unspecified people from Stone County. An incident report from the Poplarville Police Department appears in the record, but no one was arrested for the attack on Magnusen.