GRIFFIS, P.J.,
for the Court:
¶ 1. On August 10, 2009, Mika Fenelon filed a premises-liability action against Jackson Metrocenter Mall Ltd., Grubb & Ellis Management Services Inc., Clarence Evans Jr., Valor Security Services Inc., *762 and SMS Holding Corporation.[1] Metro-center filed a motion for summary judgment, which the circuit court granted. Fenelon appealed and argued that the circuit court erred when it granted summary judgment in Metrocenter’s favor. The primary issue in this case is whether the circuit court erred when it determined Fenelon did not have sufficient evidence to create a genuine issue of material fact as to whether Metrocenter’s actions were the proximate cause of her injuries. We find no error and affirm.
FACTS
¶ 2. On June 3, 2009, Fenelon had lunch with her coworkers at the Metrocenter Mall in Jackson, Mississippi. After eating lunch, Fenelon exited the mall, entered her car, backed it out of her parking space, and began to drive away. As she was driving, Fenelon felt as if her rear tire had gone flat. She stopped her car in another area of the parking lot to examine the tire. Fenelon left her door open and her car running while she examined her tire.
¶ 3. As Fenelon examined her tire, an unidentified male approached her from another area of the parking lot and pointed to the tire as if he was going to offer assistance. When Fenelon stooped down to take a closer look at the tire, the unidentified male ran to the driver’s side of Fenelon’s car, jumped in, and started to drive away. Fenelon ran to the driver’s side of the car, reached through the window, and attempted to remove the keys from the ignition. Although Fenelon could not get the keys, she held on to the car door as the unidentified male drove the car out of the parking lot. She eventually let go and fell to the pavement. Fenelon incurred minor injuries and $1,400 in medical bills as a result of the incident.
¶ 4. Metrocenter employs a variety of security measures on its premises. On the day of the incident, the security measures in place were: seventy-two security cameras, which were constantly monitored by a security officer; two uniformed security guards who patrolled the mail’s parking lots in golf carts; and one security guard on foot patrol inside the mall. Security officers communicated with each other using walkie-talkies. The Jackson Police Department (JPD) also patrolled the mall’s parking lots.
¶ 5. Rustine Neuberger, a Valor security officer, testified, through deposition, that she was monitoring the security cameras on the day of the incident. She stated that she had noticed the eventual thief and his male companion loitering in the parking lot prior to the incident. After the pair had been in the parking lot for approximately four minutes, she radioed one of the security officers patrolling the parking lots and requested that the officer approach the men to investigate. Before the security officer reached the scene, the incident had occurred, and the thief had escaped with Fenelon’s car.
¶ 6. Hughey Daigle, Valor’s regional vice president, testified, through deposition, that the mail’s security measures were implemented to deter crime. Daigle stated that Valor had used JPD crime statistics to conclude that the mall was located in a high-crime area. Daigle also noted a con *763 versation that he had with Evans concerning the mail’s security. According to Dai-gle, Evans acknowledged that the mall was located in a high-crime area.
¶ 7. Fenelon hired Willie Mack, a retired investigator with JPD, as a security expert. In his affidavit, Mack opined that an “atmosphere of violence” existed in the area surrounding and including Metrocen-ter’s premises and that the incident was foreseeable. His opinion was based on JPD crime statistics. Furthermore, Mack concluded that Metrocenter breached the standard of care by providing inadequate security and by using untrained staff. According to Mack, this breach significantly contributed to and proximately caused Fenelon’s injuries.
¶ 8. However, the circuit court found that Fenelon failed to present “probative evidence” of proximate cause. Additionally, the court noted that all of the security measures that Mack had articulated in his affidavit were in place at the time of the incident. Consequently, the circuit court granted Metrocenter’s motion for summary judgment.
STANDARD OF REVIEW
¶ 9. The standard of review for an order granting summary judgment is de novo. PPG Architectural Finishes, Inc. v. Lowery, 909 So.2d 47, 49 (¶ 8) (Miss.2005) (citing Hurdle v. Holloway, 848 So.2d 183, 185 (¶ 4) (Miss.2003)) (citations omitted). It is well settled that “[a] summary judgment motion is only properly granted when no genuine issue of material fact exists. The moving party has the burden of demonstrating that no genuine issue of material fact exists within the ‘pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits.’ ” Id. (internal citations omitted) (quoting M.R.C.P. 56(c)).
ANALYSIS

I. Fenelon was an invitee, and Metro-center owed her a duty.

¶ 10. The definition of invitee is someone who “enters the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage.” Thomas v. Columbia Grp., LLC, 969 So.2d 849, 852 (¶ 12) (Miss.2007) (citation omitted). A licensee is someone who “enters the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner.” Id. Fenelon went to Metrocenter to have lunch. Thus, she was there at the invitation of the owner for their mutual advantage. She meets the definition of invitee.
¶ 11. An invitee is owed the “duty to keep the premises reasonably safe, and when not reasonably safe, to warn only where there is hidden danger or peril that is not in plain and open view.” Id. at 853 (¶ 15). Also, a “business owner, though not an insurer of the invitee’s safety, has a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injury at the hands of the other patrons.” Id. (quoting Gatewood v. Sampson, 812 So.2d 212, 219-20 (¶ 13) (Miss.2002)). This duty extends to the parking lot around the building. Id.
¶ 12. Fenelon qualified as an invitee. As such, Metrocenter owed her a duty to exercise reasonable care to protect her from a reasonably foreseeable injury in the parking lot.
¶ 13. However, it is important to note the Mississippi Supreme Court has held that “the foreseeability of the injury sustained provide[s] the touchstone for liability,” and has “refuse[d] to place upon a business a burden approaching strict liability for all injuries occurring on its premis *764 es as a result of criminal acts by third parties.” Crain v. Cleveland Lodge 1532, Order of Moose, Inc., 641 So.2d 1186, 1189, 1191 (Miss.1994). Thus, the supreme court has determined that “it would be impossible for a business [such as Metro-center] to guarantee the safety of everyone coming onto its premises.” Id. at 1192.

II. Metrocenter did not present any evidence to establish its security measures met the standard of care.

¶ 14. Fenelon contends that Metrocen-ter breached its duty by maintaining inadequate security on its premises. Metro-center, as the movant, was required to demonstrate that it had adequate security in place to protect Fenelon from reasonably foreseeable injury. Metrocenter presented deposition testimony from three of its security officers. Each officer testified that Metrocenter had implemented security measures. However, Metrocenter failed to present any evidence regarding whether its security measures met the appropriate standard of care. Thus, Metro-center failed to meet its burden regarding this element. While Metrocenter contends that all of the security measures articulated by Feneloris security expert were in place at the time of the incident, it failed to present any expert testimony or other evidence to that effect.
¶ 15. Fenelon submitted Mack’s affidavit, in which he stated that, given the atmosphere of violence in the area surrounding and including Metrocenter’s premises, the appropriate security measures would have been:
constant monitoring of security cameras with sufficient staff to do so; sufficient staff positioned at strategic locations with the capability of responding to incidents noted on the security cameras; a minimum of two roving patrol vehicles monitoring the parking lots (the number of roving vehicles [could] be more depending on the number of the people in the parking lot[) ]; also there should be a security officer stationed in the parking lot.... These standards are supported by ASIS International, formerly American Society of Industrial Security.
¶ 16. Mack’s affidavit creates a genuine issue of material fact on whether Metro-center breached the standard of care, particularly in light of the fact that Metro-center failed to present any evidence to support its claim that all of the articulated standards were in place at the time of the incident. It is undisputed that Metro-center had a security officer monitoring seventy-two security cameras on the day of the incident. However, Metrocenter presented no evidence that one security officer was sufficient to monitor seventy-two cameras. Metrocenter had two officers patrolling the parking areas in golf carts, but there is no evidence that it had a security officer stationed in any of the four parking lots. Based on the above, a genuine issue of material fact exists as to whether Metrocenter breached the duty that it owed to Fenelon. Nevertheless, no genuine issue of material fact existed as to the proximate-cause element. As such, summary judgment was proper.

III. Metrocenter’s acts were not the proximate cause of Fenelon’s injuries.

¶ 17. Even though there is a genuine issue of material fact as to whether Metrocenter breached its duty, the circuit court did not err when it granted summary judgment because there is no genuine issue of material fact for the element of proximate causation. In Davis v. Christian Brotherhood Homes of Jackson, Mississippi, Inc., 957 So.2d 390, 404 (¶ 32) (Miss.Ct.App.2007), this Court held:
*765 Proximate cause is a concept which is more accurately defined by reference to the distinct concepts of which it is comprised, which are: “(1) cause in fact; and (2) foreseeability.” Johnson v. Alcorn State Univ., 929 So.2d 398, 411 (¶ 48) (Miss.Ct.App.2006) (quoting Ogburn v. City of Wiggins, 919 So.2d 85, 91 (¶ 21) (Miss.Ct.App.2005)). “Cause in fact means that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred. Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others.” Id.
¶ 18. The trial judge’s analysis is correct. There is not sufficient evidence of cause-in-fact. We agree completely with, and incorporate in this opinion, the trial-judge’s ruling:
The Metrocenter Defendants are entitled to summary judgment because Plaintiff is without sufficient proof to create a genuine issue of material fact on an essential element of her claim: that the acts of the Defendants were the proximate cause of Plaintiffs injuries. As a matter of law, Plaintiff fails to provide significant probative evidence in support of this essential element of her claim. The law is well established that[ ] “[t]he landowner is not an insurer of the invitee’s safety, but does owe to an invitee the duty to keep the premises reasonably safe, and when not reasonably safe, to warn only where there is hidden danger or peril that is not in plain and open view.” Corley v. Evans, 835 So.2d 30, 37 [ (¶ 22) ] (Miss.2003) [ (quotations omitted) ]. As a general principle, premises . owners are not strictly liable for all injuries occurring on their premises as a result of criminal acts of third parties. Crain v. Cleveland Lodge 1532, Order of Moose, Inc., 641 So.2d 1186, 1191 (Miss.1994). To establish a premises liability case, Plaintiff must prove the familiar elements of duty, breach of duty, proximate cause, and damages. Crain, 641 So.2d at 1189.
In her [rjesponse to Defendants’ [m]otion, Plaintiff and her expert Willie Mack rely primarily upon criminal statistics and incident reports for the area in and around the subject premises to support Plaintiffs argument that an “atmosphere of violence” existed on the subject premises such that the incident should have been foreseeable to the Me-trocenter Defendants. While Plaintiff argues that these prior criminal acts establish a genuine issue of material fact as to foreseeability, the element of proximate cause still requires Plaintiff to establish (1) foreseeability and (2) cause in fact. Ogburn v. City of Wiggins, 919 So.2d 85, 91 [ (¶ 22) ] (Miss.Ct.App.2005) (citations omitted). In an attempt to create a genuine issue as to cause in fact, Plaintiffs expert provides an opinion on security measures that should have been in place on the date in question: 1) constant monitoring of security cameras with sufficient staff to do so; 2) sufficient staff positioned at strategic locations with the capability of responding to incidents noted on the security cameras; 3) a minimum of two roving patrol vehicles monitoring the parking lots; and 4) a security officer stationed in the parking lot. However, the evidence provided by the Defendants, which includes the testimony of the security officers working at the mall at the time of the incident, reveals that each of these security measures was in fact in place.
It is undisputed that at the time of the subject incident one security guard was in a security booth monitoring at least 70 surveillance cameras, many of which were visible on the mall property; one *766 security guard was patrolling the interi- or of the mall; and two security officers were patrolling outside the mall on roving patrol vehicles. While the security officer monitoring the surveillance cameras detected the eventual thief just minutes before the theft, the subject incident quickly developed and the subject fled from the property with the Plaintiffs vehicle before he could be stopped. Neither Plaintiff nor her expert have articulated any standard of care that was breached by the security that day, and have not stated how any different security measure would have prevented this theft. With no significant probative evidence of causation, summary judgment is warranted. See Double Quick, Inc. v. Lymas, 50 So.3d 292[, 299 (¶ 35) ] (Miss.2010) (case reversed and rendered where speculative testimony of expert witness was insufficient as a matter of law to establish proximate cause); Alqasim v. Capitol City Hotel Investors, 989 So.2d 488[, 493 (¶¶ 15-16) ] ([Miss.Ct.App.]2008) (affirming summary judgment where “general statements” and “broad conclusions” in affidavit of Plaintiffs security expert were insufficient to show that any action or inaction of the premises owner caused the Plaintiffs injury).
Because Plaintiff’s expert Willie Mack only provides general statements about security measures that should have been in place without saying with any particularity that the Defendants’ failure to take any additional steps was the proximate cause of Plaintiff’s injuries, his opinions are insufficient to create a fact issue. Plaintiffs expert also fails to articulate any contention that the security measures in place were below the standard of care in the security industry. Thus, Plaintiff is without sufficient proof to create a genuine issue of material fact that the subject incident was caused by a breach of care by the Metro-center Defendants. The lack of sufficient proof also extends to Plaintiffs failure[-]to[-]warn claim against Defendant Clarence Evans, Jr., as Plaintiff has similarly failed to establish that Mr. Evans breached any standard of care or that any purported breach caused Plaintiffs injuries. Accordingly, Plaintiffs premises liability cause of action against the Metrocenter Defendants fails as a matter of law in its entirety.
(Emphasis added).
¶ 19. There was simply no evidence to show a causal link between the security in the Metrocenter parking lot and the crime committed against Fenelon at the hands of the third parties. Fenelon did not show that but for the inadequate security of Metrocenter the car jacking would not have occurred. Because there is no evidence to establish the cause-in-fact element, the foreseeability element is irrelevant. The failure to establish proximate cause makes summary judgment in favor of Metrocenter appropriate in this case. We affirm.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ„ CONCUR. BARNES, J„ CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND FAIR, J.

. Metrocenter Mall had hired Grubb & Ellis Management Services to manage the mall property. Grubb & Ellis then contracted with Valor Security Services to provide security services at the mall. SMS Holding is Valor’s holding company, and Clarence Evans Jr. was the mail's general manager on the date of the incident. For purposes of this opinion, we will refer to Jackson Metrocenter Mall Ltd., Grubb & Ellis Management Services Inc., Clarence Evans Jr., Valor Security Services Inc., and SMS Holding Corporation collectively as "Metrocenter” unless the context requires otherwise.