DICKINSON, Presiding Justice,
for the Court:
¶ 1. Isaiah Robinson accosted Linda Knox in a Kroger parking lot, punched her several times, and took her purse. Claiming Kroger had a duty to place an armed guard in its parking lot and that its breach of that duty led to her injuries, Knox sued The Kroger Company and Kroger Limited Partnership I (“Kroger”) and recovered damages. But unless Kroger was on notice of an atmosphere of violence in its parking lot, it had no duty to place an armed guard there. And because Knox failed to present sufficient evidence on this point, we must reverse and render.
BACKGROUND FACTS AND PROCEEDINGS
¶ 2. After Knox purchased groceries at the Kroger grocery store on the east side of 1-55 in Northeast Jackson, she loaded them into her car, which was parked in Kroger’s parking lot, and then opened her car door while carrying a purse on her arm. Robinson got out of his car and demanded Knox’s purse. When Knox refused, Robinson lunged at her, knocked her to the ground, and punched her several times. Robinson. then grabbed her purse and ran back to the car. Knox suffered injuries to her face, especially her right eye.
¶ 3. Knox filed suit against Kroger and several other defendants, including Robinson and Securitas Security Services, USA, Inc., a private security company that provided security services to Kroger as an independent contractor. On the day of the incident, Kendra Jackson, who was employed by Securitas, was an unarmed guard on duty at Kroger.
¶ 4. At trial, Knox called Kroger’s store manager, Chuck Head, as an adverse witness, who testified that Kroger had an average of 2,800 to 3,000 customers per day, and in the three years prior to the Knox incident, there had been only three reports of purse-snatchings. Kroger incident reports also showed that a woman had her purse stolen from her car while she returned her grocery cart.
¶ 5. Head also testified that Kroger hired a sheriffs deputy to stand inside the foyer of the store and patrol the outside sidewalk from 9:00 a.m. until midnight; that it hired Securitas officers to patrol the parking lot from 9:00 a.m. until 2:00 a.m.; and that, in case of an incident, the sheriffs deputy and security officer were in contact via a walkie-talkie or cell phone and would work together to address the situation. Kroger also provided a carryout service to assist customers in transporting their groceries to their cars.
¶ 6. Allen White, a lieutenant with the Jackson Police Department, testified that he felt Kroger’s security measures were inadequate, and that he previously had discussed security measures with Kroger’s managers, including Head, and recommended that Kroger should use off-duty police officers as security or place the uniformed armed officer outside the store and the security guard inside the store.
¶ 7. Kenneth Goodrum and Tyrone Lewis testified for Knox as causation experts. Goodrum testified that, “In my expert opinion, I believe the armed security should have been reversed. The armed deputy should have been in the parking lot to protect the customers that were coming in there to spend their money and buy Kroger’s product. The security guard could have been inside at the front to deal with the shoplifting.”
¶ 8. According to Goodrum, Kroger’s failure “to provide adequate security was the proximate cause of [Knox’s] injuries on that day.” Goodrum stated that “[a]n *443 armed officer should have been in that parking lot.”
¶ 9. Lewis testified that the Securitas officers were inadequate because “they were not allowed to do anything when it comes to servicing and protecting that particular property. They were only to observe and report, with no authority to act.” Lewis testified that “It was Kroger’s responsibility and it was their duty to provide adequate security on that property which they did not do.” According to Lewis, if an armed officer had been in the parking lot, the incident would not have occurred.
¶ 10. After Knox concluded her case-in-chief, Kroger moved for a directed verdict and argued that the evidence was insufficient to support Knox’s claim. The trial court denied the motion, and the jury returned a verdict of $2,500,000.
¶ 11. Kroger appealed, raising several issues, including whether the trial court erred by denying Kroger’s motions for directed verdict and judgment notwithstanding the verdict. We find this issue disposi-tive.
ANALYSIS
¶ 12. The issue before us — whether a trial judge should have granted a motion for a directed verdict or judgment notwithstanding the verdict (JNOV) — requires a de novo review.[1] As we have said before, a “motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of the JNOV if there is substantial evidence to support the verdict.”[2] And “substantial evidence,” as this Court has defined it, is evidence “of such quality and weight that reasonable fair-minded jurors in the exercise of impartial judgment might have reached different conclusions.”[3] Under this standard, “[t]he evidence is viewed in the light most favorable to the verdict.”[4]
¶ 13. The law of torts is well understood. To recover on a negligence claim, a plaintiff must show that the defendant breached a particular duty owed to the plaintiff, and that the breach of duty proximately caused damages.[5] And while it is true that those in control of real property have a duty, if reasonably possible, to remedy most dangerous conditions on their property and to warn of those they cannot eliminate,[6] that duty presupposes the defendant knows, or should know, of the dangerous condition.[7]
¶ 14. Where the alleged dangerous condition is the threat of an assault, “[t]he requisite cause to anticipate the assault may arise from (1) actual or constructive knowledge of the assailant’s violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists on the premises.”[8] Because Knox does not *444 allege Kroger had actual knowledge of Robinson’s violent nature, she depends solely on her assertion that Kroger was aware of an atmosphere of violence on its premises.
¶ 15. In an attempt to establish Kroger’s knowledge of an atmosphere of violence in its parking lot, Knox presented evidence of four Kroger incident reports involving three purse-snatchings and one stolen purse, over the course of three years. Knox also presented evidence that one of Kroger’s managers was aware of crime throughout the 1-55 corridor.
¶ 16. We find as a matter of law that — in the context of Kroger’s more than three million customer visits over the course of three years — four incidences of criminal activity are wholly insufficient to establish an atmosphere of violence on Kroger’s parking lot. And imposing liability without notice of an atmosphere of violence would be nothing short of strict liability for injuries caused by the criminal activity of third parties.[9] It is well settled that a property owner is “not an insurer of an invitee’s safety,” but owes only “a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of another.”[10]
¶ 17. The fact that crime occurs throughout the 1-55 corridor — absent sufficient evidence of criminal activity on the defendant’s property, or near enough to pose a danger to Kroger’s customers — is also insufficient.
¶ 18. Although there was testimony about “calls for service” involving ten possible additional crimes against the person, Knox presented no police reports or other evidence verifying the accuracy of the calls. As the Fifth Circuit noted, “police incident reports” are prepared by the responding officers when they confirm that a crime has occurred.[11] Here, we do not have them.
¶ 19. For further support, Knox cites Thomas v. Columbia Group, LLC, to show that “evidence of an existing atmosphere of violence may include ‘the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant’s business premises, as well as the frequency of criminal activity on the premises.’”[12] But in Thomas, the plaintiff presented evidence of more than five deadly shootings and numerous incidences of fighting on the premises within the ten years preceding the plaintiffs incident.[13] Further, the plaintiff presented evidence that the business’s manager knew that the plaintiff had been shot on the property several days before the same shooter came back to the property and killed the plaintiff.[14] According to the evidence, the business’s manager knew of each of these shootings.[15]
¶20. Here, Knox presented little evidence that Kroger was aware, or should have been aware, of any violent attacks in its parking lot. Instead, Knox showed only that Kroger knew of three purse-snatchings and an incident of a purse stolen from a car. There were no violent *445 attacks similar to the attack suffered by Knox.
¶ 21. This case is also distinguishable from Gatewood v. Sampson, in which sixty violent crimes had been reported near the business’s premises within the three years before one of its patrons was shot;[16] and Glover v. Jackson State University, in which JSU was shown to have knowledge of the two rapists’ violent tendencies, and sixty-three crimes had been reported on JSU’s campus during the three months before the rape. Of these sixty-three crimes, twenty-one were reports of violence and four were reports of rape and sexual battery.[17]
¶ 22. Gatewood and Glover presented a jury question as to whether an atmosphere of violence existed.[18] But more analogous to this case is our decision in Crain, in which we found no atmosphere of violence.[19] There, in the fifty-five months before the attack on the plaintiff, there were reports of numerous commercial burglaries and of larceny within the business’s vicinity.[20] Also, there were eleven assaults, robberies, and other violent crimes in that five-year period in the surrounding two blocks.[21] We held that the plaintiff failed to produce evidence that the assault was foreseeable.[22] Here, the evidence is equally insufficient to find that Robinson’s assault on Knox was a foreseeable consequence of not having an armed guard in the Kroger parking lot. We have said — in similar cases — that “merchants are not required to carry out the duties of the police force”;[23] and we hold to this principle.
¶ 23. Because Kroger was not on notice of an atmosphere of violence on its premises, it had no duty to place an armed security guard in its parking lot. And in the absence of this duty, there is no need to address the remaining elements of the negligence action.
CONCLUSION
¶ 24. Knox presented insufficient evidence to establish that Kroger had a duty to place an armed guard in its parking lot, and a reasonable jury could not have found Kroger liable for the unforeseeable attack on Knox. We therefore reverse and render a judgment for Kroger.
¶ 25. REVERSED AND RENDERED.
CARLSON, P. J., LAMAR AND PIERCE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ., WALLER, C.J., AND RANDOLPH, J., NOT PARTICIPATING.

. U.S. Fidelity & Guar. Co. of Miss. v. Martin, 998 So.2d 956, 964 (Miss.2008).

. Adcock v. Miss. Transp. Comm’n, 981 So.2d 942, 948 (Miss.2008) (citing Johnson v. St. Dominics-Jackson Mem’l Hosp., 967 So.2d 20, 22 (Miss.2007)).

. Natchez Elec. & Supply Co. v. Johnson, 968 So.2d 358, 362 (Miss.2007) (citing Blake v. Clein, 903 So.2d710, 731 (Miss.2005)).

.Adcocfc, 981 So.2d at 949.

. Crain v. Cleveland Lodge 1532, Order of Moose, Inc., 641 So.2d 1186, 1189 (Miss.1994).

. Mayfield v. The Hairbender, 903 So.2d 733, 735-36 (Miss.2005).

. Gatewood v. Sampson, 812 So.2d 212, 219 (Miss.2002) (quoting Lyle v. Mladinich, 584 So.2d 397, 399 (Miss.1991))

. Lyle, 584 So.2d at 399 (quoting Grisham v. John Q. Long V.F.W. Post, 519 So.2d 413, 416 (Miss. 1988)).

. Crain, 641 So.2d at 1191.

. Double Quick, Inc. v. Lymas, 50 So.3d 292, 298 (Miss.2010) (quoting Simpson v. Boyd, 880 So.2d 1047, 1051 (Miss.2004)).

. Tillman v. Wendy’s Int'l, Inc., 252 F.3d 434 (5th Cir.2001).

. Thomas v. Columbia Group, LLC, 969 So.2d 849, 855 (Miss.2007) (quoting Lyle v. Mladinich, 584 So.2d 397, 399 (Miss.1991)).

. Id. at 855.

. Id. at 854.

.Id. at 854-55.

. Gatewood v. Sampson, 812 So.2d 212, 220 (Miss.2002)

. Glover v. Jackson State Univ., 968 So.2d 1267, 1279 (Miss.2007).

. See id.; Gatewood, 812 So.2d at 221.

. Crain, 641 So.2d at 1192.

. Id.

. Id.

. Id.

. Gatewood, 812 So.2d at 220; Crain, 641 So.2d at 1192.