# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00671-COA

MARILYN DEDEAUX AND RUSSELL GUYMON                    APPELLANTS

v.

LAKE CAROLINE OWNERS ASSOCIATION,                         APPELLEE
INC.

| | |
|---|---|
| DATE OF JUDGMENT: | 04/15/2013 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | J. PEYTON RANDOLPH II |
| | SHERRIE LYNN DEWOLF |
| ATTORNEYS FOR APPELLEE: | JAMES SCOTT ROGERS |
| | JAMES LEROY BANKS IV |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT TO APPELLEE |
| DISPOSITION: | AFFIRMED - 09/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., MAXWELL AND FAIR, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.     Eugune Owen crashed his speed boat into Russell Guymon's pontoon boat, injuring Guymon as well as fellow passenger Marilyn Dedeaux. Dedeaux and Guymon blame their injuries not just on Owen, but also their neighborhood association, which owns the private lake where the boat wreck occurred. But the neighborhood association was not the insurer of Dedeaux and Guymon's safety and cannot be held strictly liable simply because an injury occurred on the lake. Instead, the association only had a duty to protect Dedeaux and Guymon from reasonably foreseeable injuries at the hand of a third party.

¶2.    To be reasonably foreseeable, the association must have had "cause to anticipate" Owen's actions because Owen had a specific history of careless boating or because the lake had a general history of negligence among its boaters.  Here, Dedeaux and Guymon failed to present any evidence of either.  While they point to another boat wreck that occurred on the lake six years before theirs, considering the lake had more than 700 registered boats, we find this single incident, removed in time, was not enough to establish the incident with Owen was reasonably foreseeable.

¶3.    Thus, Dedeaux and Guymon failed to establish their neighborhood association had a duty to protect them from Owen's negligent act.  We therefore affirm the grant of summary judgment in favor of the association.

**Background**

¶4.    Dedeaux, Guymon, and Owen were all residents of  Lake Caroline neighborhood in Madison County, Mississippi.  In the middle of Lake Caroline sits an 800-acre lake, owned and operated by the Lake Caroline Owners Association (LCOA).

¶5.    On a summer night in 2011, after sunset, Dedeaux and Guymon, along with their respective spouses, were sitting in Guymon's pontoon boat, anchored in the middle of the lake.  Owen was speeding across the water when he took a hard turn and crashed into Guymon's boat.  Dedeaux and Guymon were tossed into the water, sustaining injuries for which they claim that LCOA is at least partially liable.

¶6.    They sued LCOA for negligent failure to maintain a safe premises.[1]  LCOA responded

---

[1]  In addition to LCOA, they also sued Owen and the man with whom he co-owned the boat, John Kaiser.  By agreed order, Owen and Kaiser were dismissed with prejudice.

with a motion for summary judgment, arguing it had no reason to anticipate the boating accident and, thus, no duty to protect Dedeaux and Guymon from the boating accident. Lake Caroline did not have a history of boating accidents, especially accidents at night involving a high rate of speed. And Owen did not have a history of operating his boat recklessly. Further, LCOA has never guaranteed the safety of the residents using the lake. Instead, the LCOA's lake rules and regulations make clear that lake activities are inherently dangerous and that residents swim, fish, ski, and boat at their own risk.

¶7. Dedeaux and Guymon countered that the boating accident had been reasonably foreseeable. As support, they referenced one accident that had occurred six years before theirs. And they cited deposition testimony by LCOA's vice president that, before the 2005 accident, the association had considered implementing a "lake marshal" program to regulate fishing. But after the 2005 accident, LCOA was concerned that the program would give the false impression that fishing marshals were there to ensure the safety of swimmers and boaters. So it scrapped the idea.

¶8. Dedeaux and Guymon also submitted an affidavit by a boating-safety expert. According to the expert, the 2011 accident was reasonably foreseeable based on the 2005 accident and the fact LCOA did not implement any new policies following the 2005 accident. Guymon too submitted an affidavit—along with an affidavit by his neighbor that matched his verbatim. Guymon attested that before his accident he had observed an unspecified number of boats traveling at some rate of high speed.

---

Also, Dedeaux's husband and Guymon's wife were among the original plaintiffs. But their claims were dismissed without prejudice.

3

¶9. The circuit court found Dedeaux and Guymon's evidence insufficient to establish that Lake Caroline had cause to anticipate the accident, which would have triggered a duty to take safety measures to try to prevent the accident. And because Dedeaux and Guymon failed to establish that LCOA owed them a duty, the circuit court dismissed their claim on summary judgment.

¶10. Dedeaux and Guymon immediately appealed.

**Discussion**

¶11. On appeal, Dedeaux and Guymon insist the injuries they sustained were partly caused by LCOA's negligence. The first element of any negligence claim is duty. *See, e.g.*, *Doe v. Hunter Oaks Apartments, L.P.*, 105 So. 3d 422, 425 (¶10) & n.4 (Miss. Ct. App. 2013). So for them to have a claim against LCOA for failing to protect them from Owen that night, they must first establish that LCOA *had a duty* to protect them from Owen. *See id.* Because Dedeaux and Guymon cannot do this, the trial court was right to dismiss their claim against the LCOA on summary judgment.

### I. Duty to Protect Invitees

¶12. Duty is a question of law. *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (¶29) (Miss. 2004). As the owner and operator of Lake Caroline, LCOA did owe those who used the lake certain duties. The extent of those duties depends on the lake user's status—trespasser, licensee, or business invitee. *Corley v. Evans*, 835 So. 2d 30, 37 (¶21) (Miss. 2003). A business invitee is owed a greater duty than trespassers and licensees. *Id.* at 37 (¶21), 39 (¶28). And for purposes of summary judgment only, LCOA has conceded Dedeaux and Guymon's status as business invitees. But even as business invitees, LCOA

4

did not owe them the duty to protect them against Owen's allegedly negligent boat operating.

¶13. "The landowner is not an insurer of the invitee's safety[.]" *Id.* at 37 (¶22). But the landowner "does owe to an invitee the duty 'to keep the premises reasonably safe, *and* when not reasonably safe, to warn only where there is hidden danger or peril that is not in plain and open view.'" *Id.* (quoting *Caruso v. Picayune Pizza Hut, Inc.*, 598 So. 2d 770, 773 (Miss. 1992)).

¶14. Traditionally, keeping the premises reasonably safe has referred to the physical condition of the property. A business owner has a duty "to maintain the premises in a reasonably secure or safe condition" to prevent some type of "slip and fall." *Lyle v. Mladinich*, 584 So. 2d 397, 399 (Miss. 1991). But starting in the 1980s, the Mississippi Supreme Court began expanding the duty to keep the premises reasonably safe to "encompass negligent or wrongful attacks on the invitee by other patrons." *Id.* (citing *May v. V.F.W. Post # 2539*, 577 So. 2d 372 (Miss. 1991); *Grisham v. John Q. Long V.F.W. Post*, 519 So. 2d 413, 417 (Miss. 1988); *Kelly v. Retzer & Retzer, Inc.*, 417 So. 2d 556 (Miss. 1982)); *see also Kroger Co. v. Knox*, 98 So. 3d 441, 443 (¶14) (Miss. 2012) (addressing when "the alleged dangerous condition is the threat of an assault"). Now, to maintain a reasonably safe premises, a business owner must also protect its invitees from injuries at the hand of others that are reasonably foreseeable. *Kroger Co.*, 98 So. 3d at 444 (¶16); *Corley*, 835 So. 2d at 38 (¶22); *Lyle*, 584 So. 2d at 399.

¶15. But in this context, a third-party-inflicted injury is only deemed reasonably foreseeable when there is "cause to anticipate the wrongful or negligent act" of that third party. *Corley*, 835 So. 2d at 38 (¶23) (quoting *Grisham*, 519 So. 2d at 416). *See also* 65A

5

C.J.S. § 519 (2010) (qualifying that the "duty of an owner of premises to interfere to prevent probable injury to an invitee does not begin until the danger is apparent, or the circumstances are such as would put an ordinarily prudent person on notice of [the] probability of danger"). The supreme court has dealt multiple times with when a property owner has "cause to anticipate" one of its patrons will be criminally assaulted on the premises. If the property owner had "(1) actual or constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists," the property owner had "cause to anticipate the assault." *E.g., Kroger Co.*, 98 So. 3d at 443 (¶14); *Double Quick, Inc. v. Lymas*, 50 So. 3d 292, 298 (¶30) (Miss. 2010); *Corley*, 835 So. 2d at 38-39; *Gatewood v. Sampson*, 812 So. 2d 212, 220 (¶14) (Miss. 2002); *Lyle*, 584 So. 2d at 399; *see also Simpson v. Boyd*, 880 So. 2d 1047, 1051 (¶14) (Miss. 2004). Adapting this foreseeability test to the circumstances in this case, we find that for LCOA to have had a "cause to anticipate" Owen's negligent actions—and thus a duty to protect Dedeaux and Guymon from injuries at Owen's hand—LCOA had to have either (1) actual or constructive knowledge that Owen had been negligently operating his boat on the lake or (2) actual or constructive knowledge of a general history of negligent boating on the lake.

## II.    *Lack of Evidence to Establish Duty*

¶16.    Guymon and Dedeaux have neither claimed nor tried to prove that LCOA had actual or constructive knowledge that Owen had a history of operating his boat negligently on Lake Caroline. Instead, they have argued that LCOA knew the lake had a history of dangerous boat drivers—a problem they claim should have been addressed through better rules and a safety patrol. But the only evidence they cite of this supposed history is that there had been

6

another boat wreck on Lake Caroline six years before their crash.

¶17. In *Corley*, the supreme court found one "prior altercation three years before the current situation was not adequate notice to [the property owner] that an intoxicated friend would accidently shoot another friend at the [owner's] crawfish boil." *Corley*, 835 So. 2d at 38 (¶24). Likewise, in *Kroger Co.*, the supreme court found "as a matter of law that—in the context of Kroger's more than three million customer visits over the course of three years—four incidences of criminal activity [were] wholly insufficient to establish an atmosphere of violence on Kroger's parking lot." *Kroger Co.*, 98 So. 3d at 444 (¶16). While we are certainly not dealing with one incident per one million visits as in that case, considering there are more than 700 boats registered to use the lake, we find one boat wreck in six years is similarly insufficient as a matter of law to establish LCOA had cause to anticipate the 2011 accident. *Cf. Corley*, 835 So. 2d at 38 (¶24).

¶18. Guymon had also submitted his affidavit, as well as an affidavit by another Lake Caroline resident, both of which attested the two residents had "observed boats traveling at what appear[ed] to be excessive speeds during daylight hours and at night on and before June 4, 2011." But neither affidavit gave details about the number of speeding boats, the time frame, or, more important, whether other boats were in the vicinity. Thus, we find these affidavits were insufficient to establish there had been a pattern of reckless boating, making Owen's accident reasonably foreseeable. *Cf. Lyle*, 584 So. 2d at 399 ("rel[ying] on such factors as the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the premises" to determine if an "atmosphere of violence" existed on the

7

premises).

¶19.    We also reject Dedeaux and Guymon's argument that LCOA's mere consideration of implementing a lake-marshal program before the 2005 boat accident somehow created a legal duty to patrol the lake. Just as "merchants are not required to carry out the duties of the police force," neither are homeowners' associations. *Kroger Co.*, 98 So. 3d at 445 (¶22). Also, the stated reason why LCOA ditched the idea—which had only been raised to address the issue of fish poachers—was because it did not want to give lake users the impression the patrol was there to ensure their safety. Since "a property owner is not an insurer of an invitee's safety," we cannot fault LCOA for wanting to avoid the possible appearance it had assumed a duty that Mississippi law has never imposed. *Id.* at 444 (¶16) (internal quotations omitted).

¶20.    As the supreme court said in *Kroger Co.*, "imposing liability without notice of an atmosphere of violence would be nothing short of strict liability for injuries caused by the criminal activity of third parties." So too here, imposing liability on LCOA without any notice of an unreasonably dangerous atmosphere on the lake would be to hold LCOA strictly liable for Owen's negligent act. *See Randol v. Atkinson*, 965 S.W.2d 338, 342 (Mo. Ct. App. 1998) (holding condominium-owners associations did not have the duty "to protect the owners from all potential sources of harm, particularly those caused by the negligence of third parties"). Dedeaux and Guymon have failed to establish as a matter of law that LCOA owed a duty to protect them from Owen. And without a duty owed, there can be no negligence. We thus affirm the judgment dismissing their negligence claim against LCOA.

¶21.    **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS**

8

**AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. IRVING, P.J., AND JAMES, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., NOT PARTICIPATING.**