# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01235-COA

**ERIN HOWARD**                                                                    **APPELLANT**

**v.**

**R.M. SMITH INVESTMENTS, L.P.**                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/06/2015 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | CRYSTAL WISE MARTIN SUZANNE KEYS |
| ATTORNEYS FOR APPELLEE: | JAMIE D. TRAVIS TUJUANA S. MCGEE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED TO APPELLEE |
| DISPOSITION: | AFFIRMED - 02/28/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE, FAIR AND WILSON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     On June 5, 2013, while working as a manager at Dollar General, Erin Howard was kidnapped and assaulted at gunpoint by Justin Dennis. Dennis later pleaded guilty to kidnapping and was sentenced to fourteen years in the custody of the Mississippi Department of Corrections. Erin Howard filed a negligence-based premises-liability claim against R.M. Smith Investments L.P., the owner of the property where the Dollar General was located. After proceeding with discovery, on October 30, 2014, R.M. Smith filed its initial motion for

summary judgment.  The motion was denied, but renewed again on July 31, 2015.  The Hinds County Circuit Court granted the renewed motion for summary judgment in favor of R.M. Smith, and Howard now appeals.  Finding no error, we affirm.

**STATEMENT OF FACTS**

¶2.     Howard began working as a manager at the Dollar General located on Capitol Street in downtown Jackson approximately three years before the kidnapping incident occurred. R.M. Smith leased the property to Dolgencorp LLC, the owners of the Dollar General franchise.  Howard worked for Dollar General, and was in no way employed by R.M. Smith. Prior to the incident, there had only been two instances of violence on the premises.[1]  While the surrounding neighborhood experienced frequent criminal activity, the Dollar General location was relatively unscathed.

¶3.     A few months prior to the kidnapping incident, Howard and Dennis had two volatile encounters in which Dennis became belligerent, and cursed at and threatened Howard.  On both occasions, Howard subsequently banned Dennis from the store until further notice. Dennis generally abided by Howard's ban.  Howard never informed police, R.M. Smith, Dolgencorp, or any other authoritative figure of her prior encounters with Dennis.

¶4.     On or about June 3, 2013, Howard was preparing the store and the employees for

---

[1] *See Wright v. R.M. Smith Investments, L.P.*, 2015-CA-00199-COA, WL 4530812 (Miss. Ct. App. Aug. 30, 2016). In *Wright*, Pearlie Wright filed a negligence-based premises-liability claim against R.M. Smith.  Wright retained the same expert as Howard did in this case, and the Hinds County Circuit Court struck Wright's expert's testimony and granted summary judgment in favor of R.M. Smith.  The attorneys who represent Howard in today's case are the same attorneys who represented Wright; thus the arguments presented by Howard are extremely similar to those previously presented by Wright on appeal.

supervisory visits. However, during her preparation, the store telephone rang repeatedly. Howard answered the phone calls, but the caller hung up each time. She used the store's caller-ID feature to obtain the caller's phone number, and she used her personal cell phone to text the caller. Howard asked the caller if there was "anything or anyone at Dollar General can assist with [sic]." The caller responded crudely, and the pair exchanged a series of "heated" messages that insinuated threats of violence against the other. The caller ended the conversation with an ominous text telling Howard that they would "see [her] later" that day. Howard maintains that she was unaware that the caller was in fact Justin Dennis, and that she did not realize who the caller was until Dennis kidnapped her. Again, Howard did not inform anyone of this encounter.

¶5. Approximately thirty minutes after the last heated text message was exchanged, Howard went outside into the parking lot of the store. As seen on the indoor security video footage, one minute later, Howard ran back into the store, trailed by Dennis, who was carrying a handgun. Dennis fired one shot in the store and brought Howard back outside and loaded her into his vehicle. Howard remained with Dennis for roughly six hours before police officers successfully negotiated her freedom. There were no security guards employed by R.M. Smith for the Dollar General location, nor were any working security cameras facing the parking lot where a large part of the incident occurred.

¶6. R.M. Smith renewed its initial motion for summary judgment, which was granted on October 30, 2015. Howard appealed the circuit court's decision and, while Howard asserts four issues in her brief, all of the issues relate to the larger issue of whether summary

judgment was properly granted.[2]

## DISCUSSION

¶7.    A trial court's grant of summary judgment is reviewed de novo. *Thrash v. Deutsch, Kerrigan & Stiles LLP*, 183 So. 3d 838, 841 (¶10) (Miss. 2016). "Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to [a] judgment as a matter of law." *Id.* at 841-42 (¶10) (citing M.R.C.P. 56(c)). The movant bears the burden of showing that no genuine issue of material fact exists, and the evidence must be viewed in the light most favorable to the nonmovant. *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (¶5) (Miss. 2005). "When considering a motion for summary judgment, the trial court must not try issues of fact; rather, it is to decide whether issues exist that must be determined at trial*." Crawford v. Custom Sign Co.,* 138 So. 3d 894, 898 (¶11) (Miss. 2014). Summary judgment is appropriate where the nonmoving party cannot make a prima facie showing of all of the elements of her claim*. Huynh v. Phillips*, 95 So. 3d 1259, 1262 (¶9) (Miss. 2012). "[S]ummary judgment is mandated where the respondent has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." M.R.C.P. 56(c); *Smith ex rel. Smith v. Gilmore Memorial Hosp. Inc.*, 952 So. 2d 177 (¶9) (Miss. 2007).

---

[2] Howard frames the issues on appeal as the following: (1) Summary judgment was improper because there existed genuine issues of material fact; (2) The circuit court erred in finding that *Titus v. Williams*, 844 So. 2d 459 (Miss. 2003), and *Kelly v. Retzer & Retzer Inc.*, 417 So. 2d 556 (Miss. 1982), were controlling precedent; (3) The circuit court erred in drawing inferences favorable to the moving party; and (4) The circuit court usurped the province of the jury by determining the existence of an intervening cause. All four issues share the common issue regarding whether summary judgment was proper. Thus, the issues will be addressed under the larger heading.

4

¶8.    In a negligence-based premises-liability case, a plaintiff "must show that the defendant breached a particular duty owed to the plaintiff, and that the breach of duty proximately caused damages." *Kroger v. Knox*, 98 So. 3d 441, 443 (¶13) (Miss. 2012). The Mississippi Supreme Court has held that "failure on the part of [the invitee] to make any showing as to proximate cause, an essential element of his claim, makes summary judgment in favor of [the premises owner] appropriate in this instance." Jeffrey Jackson *et al.*, *Encyclopedia of Mississippi Law* § 13:170 (2015) (citing *Crain v. Cleveland Lodge 1532, Order of Moose Inc.*, 641 So. 2d 1186 (Miss. 1994)).

¶9.    In the case at bar, Howard was deposed by R.M. Smith, and in her deposition, she admitted that she initiated contact with Dennis by texting him from her personal cell phone. Because supervisors were inspecting the store later that day, Howard testified that she got the caller's number from the store's caller ID and initiated contact by asking, "[I]s there anything or anyone at Dollar General can assist you with [sic]." The conversation continued, and was escalated by both parties. At one point Dennis said, "You won't make it to the next year." To which Howard responded, "[T]hat's fine . . . . I hope your people can bury you like my people can bury me." She further responded, "[Y]ou probably can't read," and Dennis ended the conversation by replying, "[S]ince I can't read, you'll have to see me."[3] Howard admitted later that Dennis informed her that he would see her that day.

¶10.   After conducting two hearings on R.M. Smith's motion for summary judgment, the

---

[3] Howard asserts in her appeal that the trial judge erred in characterizing these text messages as "heated," and that such a characterization was an inference improperly drawn in favor of the movant, R.M. Smith. However, such a characterization is not an improper inference favoring the moving party, but merely a description of a hostile conversation.

circuit court weighed all of the evidence presented and found these text messages to be a provocation and an independent intervening cause of Howard's injuries.

¶11. Property owners have a duty to remedy or warn of dangerous conditions on their property that are known, or should be known. *Crain*, 641 So. 2d at 1186 (¶8). "Where the alleged dangerous condition is the threat of an assault, "[t]he requisite cause to anticipate the assault may arise from (1) actual or constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists on the premises." *Knox*, 98 So. 3d at 466 (¶14). Even if there is evidence supporting the conclusion that the property owner knew of, and allowed, an atmosphere of violence to exist, the owner is not liable if the plaintiff created and caused the harmful event in question. *Titus v. Williams*, 844 So. 2d 459, 466 (¶26) (Miss. 2003); *see generally Kelly v. Retzer & Retzer Inc.*, 417 So. 2d 556 (Miss. 1982). However, no duty to warn is owed to an invitee, licensee, or trespasser if the dangerous situation was one she created herself and was such that she was well aware of its presence. *Titus*, 844 So. 2d at 466 (¶26).

¶12. Following the precedent in *Titus*, R.M. Smith owed no duty to Howard because she created the dangerous situation herself. She initiated contact with Dennis, provoked him over text messages, and failed to provide notice to anyone that Dennis may arrive at the store later that day. Dennis testified that upon receiving the text messages, he was extremely angry and that Howard was his only target that day. Howard was an independent intervening cause that was unforeseeable to R.M. Smith and, thus, severed any liability R.M. Smith might have regarding Howard's injuries.

¶13. Additionally, Howard never informed R.M. Smith of her previous encounters with Dennis, nor did she inform it of her text-message conversation with Dennis on the day of the kidnapping. R.M. Smith did not have actual knowledge of the dangerous threat Dennis posed to Howard. Further, R.M. Smith did not have actual knowledge of an "atmosphere of violence" at the property. There had only been two previous crimes of violence at the property in the five years preceding Howard's kidnapping. *See Knox*, 98 So. 3d at 444 (¶16) (finding no atmosphere of violence existed even where there were four instances of criminal activity). The minimal amount of crimes of violence in the five-year period prior to the incident does not establish an atmosphere of violence. This is especially true when the two incidents are contrasted with the location of the store and the crime statistics of the surrounding area.[4] For the same reasons stated above, R.M. Smith did not have constructive knowledge either. R.M. Smith cannot be expected to constructively know of a personal vendetta against an employee when that employee never informed it of such. Nor could it constructively know of an atmosphere of violence when one did not exist.

¶14. The circuit court used the aforementioned relevant precedent, in conjunction with the evidence and testimony presented, to correctly determine that no genuine issue of material fact existed. Howard failed to establish the essential element of proximate cause, and the circuit court correctly granted R.M. Smith's motion for summary judgment. For these reasons, we affirm.

¶15. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST**

---

[4] The store is located in downtown Jackson, an area with a statistically higher crime rate.

**JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. IRVING, P.J., AND WILSON, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**